On petition for review filed January 18*, petition for review dismissed as moot
July 25, 1991

LOVEJOY SPECIALTY HOSPITAL, INC.,
*Respondent on Review,*

*v.*

ADVOCATES FOR LIFE, INC.,
Operation Rescue, Inc., Randy Craig Alcorn,
Rosemary M. Belezos, Brian W. Clowes,
Kathleen K. Clowes, Paul C. Deparrie,
Russell David Devoss, Judy L. Hager,
Franklin L. Hicks, Judith Anne Quiring,
Priscilla J. Martin, James J. Miller,
Robert William Morton, Howard Romano,
Rachelle R. Shannon, John Robert Snyder,
Kathleen M. Stewart, Phillip Tussing
and James Marshall Tuttle,
*Defendants,*

Andrew A. Burnett, Sean Robert Hahn,
Catherine Ramey, Dawn M. Stover, Linda J. Wolfe,
Norman Norquist, Kathy Gorsline and Marion Hite,
*Petitioners on Review.*

(TC A8907-03773; CA A63666; SC S37801)

814 P2d 511

Norman L. Lindstedt, Portland, for petitioners on review.

---

* Appeal from judgment of Multnomah County Circuit Court, Nely L. Johnson, Judge. 104 Or App 596, 802 P2d 684 (1990).

## MEMORANDUM OPINION

It appears from the record and information provided by counsel to the parties in this case that no petitioner is presently incarcerated, and a permanent injunction has now been issued and is on appeal. We conclude, therefore, that the present proceeding is moot.

The petition for review is dismissed as moot.

**FADELEY, J.,** dissenting.

I dissent from the order dismissing the petition for review as moot and would, instead, grant review.

This petition presents the question whether a person found in contempt of a court order may be incarcerated until the person makes a promise about the future that adversely impacts a religious belief, *i.e.,* whether confinement to coerce religious conscience is lawful. The record provides a basis for reviewing petitioners' claim that incarceration was employed to require them to recant their belief rather than as a reformative or punitive measure related to wrongful conduct. In my opinion, that question deserves a hearing and a deliberative decision.

The fact that the preliminary injunction has now been made permanent in no way moots issues arising out of orders based on a contempt conviction, which orders and conviction have in no way been vacated, invalidated or set aside by subsequent developments in the main case for an injunction. This is especially true of those appellants who were never parties to the main case in which the preliminary and the corresponding permanent injunctions were issued but who were convicted of contempt and ordered, as they assert, to choose between incarceration or recanting their religious beliefs.

The order, thus challenged, was grounded on the jurisdiction that the trial court had acquired over their persons by reason of its finding that they were contemnors. Appellants challenge as unlawful the remedy imposed for contempt, not the preliminary injunction or even their status as contemnors. The issue of mootness deserves briefing, argument and deliberative consideration thereafter before it is decided by a reasoned and public opinion.

A glance at some aspects of the development of religious freedom may help place appellants' challenge in perspective.

John Lilburne, book seller and printer, was charged in 1637 with treason, committed by the act of importing books to England whose contents were thought to promote dissent from the then established religion of the king and realm. As do the contemnors in this case, Lilburne refused to take an oath. That oath would have required Lilburne to answer *all* questions put to him by the Court of Star Chamber, without limitation to the actual case before the court. Convicted, pilloried, whipped and gagged, Lilburne was imprisoned until such time as he should agree to take that oath.

The intervening 350 years have wrought many changes in the law. Lilburne's mistreatment at the hands of that court spawned the privilege against self incrimination. The American colonists' break with the mother country and the crown guaranteed that religious beliefs would not be trammelled by governmental coercion, a guarantee enshrined in the Bill of Rights. And courts no longer sanction physical brutality to coerce conscience, even where a person harbors beliefs not shared by a majority of people. With those historical facts about some of the causes of changes in the practices of courts in mind, I turn to the facts of record in this case.

On August 14, 1989, the trial court granted a preliminary injunction against some of the petitioners (named in the case heading)[1] at the request of the plaintiff in a civil action seeking a permanent injunction against them. The trial court made findings that the named party-defendants had trespassed on the plaintiff's property, obstructed free access to the property, accosted the plaintiff's patients and employees, harassed and intimidated persons entering the property, and

---

[1] Petitioners for review include both individuals named as party-defendants in the original complaint for injunction and third persons who were not parties when the preliminary injunction was issued. The third persons were later served with an order to show cause concerning violation of the preliminary injunction and were convicted of contempt. They appeal from the conditions set by the court on the incarceration that followed conviction.

had shouted or otherwise made noise so loud that it substantially interfered with the plaintiff's activities inside a building on the property.

In addition to prohibiting the named party-defendants from trespassing on the plaintiff's property, the preliminary injunction stated:

"This order applies to * * * all persons or entities acting in active concert or participation with such defendants who have actual notice of this order."

On September 30, 1989, according to the affidavit of the plaintiff's employee, "protesters" appeared at the site. When the employee attempted to hand a copy of the preliminary injunction to the "protesters," they declined to accept it. The employee, accompanied by a Portland police officer, then orally advised each person later cited for contempt "of the injunction and * * * that they were in violation of the injunction." Sometime thereafter, the police arrested several persons, including six who were not named as party-defendants in the civil action from which the preliminary injunction had been issued.

Next, based on the employee's affidavit, the plaintiff obtained an order directing several persons to show cause why they should not be held in contempt because of their conduct on September 30. The order to show cause named seven persons who were not named as party-defendants in the civil action from which the preliminary injunction had been issued, as well as several persons who were named defendants in that action. One person was found not to have had knowledge of the preliminary injunction at the time of the September 30 conduct and was discharged. She was not required to promise to abide by the injunction in the future. The remaining persons were found guilty of contempt but no sanction was imposed on them resulting from their conduct on September 30 that constituted the contempt. Instead, the trial court advised them that they would be released *without any sanction* if they promised to comply with the preliminary injunction under oath in writing or in open court. (An example of the trial court's procedure with one non-party contemnor that allegedly presented the choice between recanting or incarceration is in the appendix to this dissenting opinion.)

At the time of the trial court's interrogation of them as to their future intent to comply, the contemnors involved in this appeal signed and submitted statements which read in part:

"I understand the Order of the Court, which authorizes my release from custody if I promise *under oath, in writing or in open court,* to obey the injunction of August 15, 1989.

"The Order raises for me matters of conscience. * * * The Order compels me to agree with existing abortion law, and the injunction which I cannot do? *This does not mean that I will disobey the injunction if released.* I simply cannot in conscience agree in court to obey what I consider to be unjust law and orders." (Emphasis added.)

The trial court's decision to exact the promise of future inaction as a condition for release without sanction for the contempt followed a conference during which the plaintiff's counsel argued:

"The Court indicated that — the concern arises that because the Court did not in the first instance require a promise, can the Court now condition their freedom in essence on the extraction of a promise?

"* * * * *

"So I suggest that if we just leave the situation we're in now, with all of the emotional entanglements, and just look at a commonplace, run-of-the-mill, garden variety, commercial dispute regarding trespass on property, it becomes obvious that this Court has and must have the power to enforce a prohibitory injunction by requiring the party enjoined to agree to obey.

"* * * * *

"I think * * * we are asking for civil, not criminal, contempt; that we are seeking coercive, not punitive sanctions; *that we want* the defendants and those who acted in active in concert and participation incarcerated until such time as they agree to obey the existing order of this Court during the pendency of this litigation. Since those facts are all true, most of the discussion about the distinctions between civil and criminal, direct and indirect, and so forth, are simply irrelevant." (Emphasis added.)[2]

---

[2] The main litigation is still pending on appeal of a permanent injunction corresponding to the former injunction, according to court records. This change in status of the main case does not change the fact that non-parties were incarcerated

Counsel for both the party and the non-party contemnors argued to the trial court that:

"I don't find a case where the court in a civil contempt proceeding has the power to put somebody in jail to compel a promise, and you know, you've [*i.e.,* the court had] identified that as the issue * * *."

The trial court explained why it required the promise as follows:

"THE COURT: As to one of those parties, I know I dismissed the case because it was the — woman indicated that she was not aware of the injunction. And so as to her I dismissed the case. As to the other, I left that issue open for argument about attorney's fees at a later time * * *.

"They also indicated to me that they intended to continue disobeying that order or, *at least that they could not promise in court that they would obey the order.*" (Emphasis added.)

After receiving an exhibit making the claim of conscience for each person involved, the trial court entered an order on January 23, 1990, in part, as follows:

"ORS 33.010(e) and 33.020(2)[3] authorizes the Court to use incarceration to coerce compliance of the court order against parties who wilfully have disobeyed the Court's order.

"On December 21, 1989, [a non-party defendant contemnor] stated under oath in open court that he intended to obey the injunction in the future, notwithstanding his past disobedience. After the close of the second hearing on January 8,

for many months in an effort to extract promises under oath nor does it provide them an avenue to review the legality of that incarceration. Their contempt convictions — upon which were founded the conditions for confinement that they challenge on appeal as unconstitutional — still stand. The trial court's jurisdiction over their persons founded on that conviction has not been ended by any record document called to our attention. The contempt statutes contain no time limit on that civil jurisdiction. Or Laws 1991, ch 724, § 12 (SB 376 B-Eng § 12(1)) limiting initiation of proceedings "to impose remedial sanctions" is not yet in effect and, if it were, that time would not yet have run.

3 ORS 33.020(2) provides:

"In addition to the punishment provided for in subsection (1) of this section, the court or judge shall have power to constrain performance of any lawful order, judgment or decree of such court or judge, by imprisonment of the person failing or refusing to comply, until the order, judgment or decree has been complied with."

1990, and after the Court's oral finding of contempt and order of incarceration, [a non-party defendant contemnor] stated under oath in the presence of the Court that he intends to obey the injunction. No sanctions are imposed against [the two non-party defendant contemnors who promised as the court demanded].

### "CONCLUSIONS OF LAW

"\* \* \* \* \*

"The Court further orders that [seven persons, four of whom are non-party defendant contemnors] are to be incarcerated until they agree to obey the injunction, or the injunction is no longer in effect whereupon the Court will order their release. \* \* \*

"The Court will order the release of any of the above persons immediately upon its receipt of a sworn or affirmed written or oral statement that an individual defendant intends to obey this Court's August 14, 1989 injunction."[4]

This petition for review does not involve a case of incarceration simply to enforce an injunction against future trespass but, rather, in the view asserted by appellants, incarceration until contemnors recant their belief that abortion takes human life without moral justification. If a contempt is criminal, incarceration is subject to a maximum limit. ORS 33.020(1). If a contempt is civil, incarceration is indeterminate, continuing for as long as it takes to obtain compliance. ORS 33.020(2). Because the order for incarceration here is indeterminate, in the circumstance under discussion, imprisonment for life theoretically may result from refusal to recant, assuming that the court means what it says when it says that it will not lift its conditions for release without a promise under oath.

Unless our jails are intended as gulags, beliefs abiding into the future, unaccompanied by action that transgresses legal rights or strictures, may not, in my view, be any basis for incarceration.

---

[4] The trial court declined to stay incarceration pending appeal unless a $10,000 bond was posted. When asked to stay the incarceration pending the appeal, the Court of Appeals stayed the contempt order "subject to the following terms." One of the terms continued appellants' incarceration until the appellants promised to obey the order.

Our system of constitutional government presupposes that enforceable laws and inviolable beliefs may coexist.[5] Either dismissing as moot or denying review in this case forecloses examination of (1) whether that coexistence may be facilitated in a better way, less intrusive of restraints on personal and religious liberties, than requiring citizens to choose between incarceration and personal religious belief, or (2) whether the constitutional parameters that assure that coexistence have been violated.[6] Thus, denying review leaves undisturbed the proposition that a choice between recanting belief or incarceration is a permissible choice for the law to require.

The case has been dealt with below as if the major issue is whether petitioners' past contempt is properly classified as criminal or civil. But the trial court meted no punishment whatever for the September 30 conduct in contempt of the court's injunction. Petitioners' incarceration was, so far as the record before us shows, based solely on their refusal to use a form prescribed by the court by which to agree to avoid such conduct in the future. Petitioners argue that jailing a contemnor for past conduct but conditioning release on a future promise of inaction "simply will not remedy the original act for which the contempt was found." In other words, petitioners argue that incarceration grounded on contempt is not permissible where the incarceration cannot remedy the acts of disrespect of the court's authorities for which the contempt was adjudged, especially where the incarceration is directed toward overriding religious conscience.

The petition for review purports to distinguish, and thus make inapplicable to this case, all authorities cited by the Court of Appeals. The petition indicates that those authorities are from cases where a mandatory injunction required an incarcerated person to perform an act in the future, when

---

[5]

"If there is any fixed star in our constitutional constellation it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia Board of Education v. Barnette*, 319 US 624, 642, 63 S Ct 1178, 87 L Ed 1628 (1943).

[6] A major purpose of the law as an institution is to resolve disputes by fostering coexistence of conflicting philosophies.

failure or refusal to act as ordered defeated the court's order. In the instant case, inaction — doing nothing — complies with the trial court's injunction that prohibits future trespass. But contemnors are being required, on pain of incarceration, to take an action not compelled by the terms of the injunction. There is some authority to support the distinction. *See In re Contempt of Dougherty,* 429 Mich 81, 413 NW2d 392, 401 (1987) ("a coercive sanction is proper only when the contemnor, at the time of the contempt proceeding, is in present violation of the court's order," *i.e.* only proper to compel conduct that is affirmatively required by a court's order to which doing some affirmative act will be compliance); *Lambert v. Montana,* 545 F2d 87, 91 (9th Cir 1976) (continued confinement after there is a substantial likelihood that continued confinement no longer has coercive influence on contemnor violates federal due process rights); Note, 19 Hofstra L Rev 67 (1990).

The petition for review also contends that a civil contempt to enforce a "prohibitory injunction" into the future may not lawfully be the basis for incarceration for an indeterminate period where the court fashions a definition of future compliance that requires a statement contrary to the religious beliefs of the contemnor. Petitioners argue that in this case the indeterminate future incarceration was not imposed because of conduct breaching the preliminary injunction but rather punished the contemnors for their disagreement with the court's order based on their religious beliefs. Petitioners put it this way:

> "It is conceded that they could gain release by swearing allegiance to the court's prior order. But in the case of these persons of conscience, the sentence was punitive; designed to punish them in a civil proceeding, for their disagreement with the courts on whether or not human life from conception has value in a civilized society. The *Gompers [Gompers v. Buck's Stove and Range Co.,* 221 US 418, 31 S Ct 1472, 55 L Ed 797 (1911)] criteria in relation to prohibitory injunction and past conduct, should not be rejected."

In effect, the petitioners' contention is that they have been incarcerated, not because they threaten to violate the order, but because their religious beliefs prevent them from agreeing that the court's order is a just order. Petitioners reference Article I, section 2, which provides: "All men shall be secure

in the Natural right, to worship Almighty God according to the dictates of their own consciences."

Article I, section 3, provides: "No law shall in any case whatever control the free exercise, and enjoyment of religeous (sic) opinions, or interfere with the rights of conscience." The Oregon constitution appears to me to be supportive of petitioners refusal to swear an oath violative of their religious conscience.

The Court of Appeals recognized the claim of conscience arising from the trial court's conditioning of the petitioners' release on, among other things, recanting a belief under oath. The Court of Appeals dealt with that issue as follows:

> "Although imprisonment for civil contempt may be inappropriate where the contemnor is objectively unable to comply with a lawful order of the court, defendants' argument that complying with the underlying injunction requires them to violate their consciences does not present that case."

The first part of the sentence concludes that an objective test is to be used to determine inability to comply but does not elaborate or state that test. The court simply assumed that each defendant-contemnor was objectively capable of swearing under an oath that would imply that defendant does not hold a certain belief when that defendant does hold that belief and considers that belief religiously inspired.[7] The second part of the sentence contains no explanation for its conclusion that a claim of religious conscience cannot present a case of inability to comply. In view of Article I, section 3, of the Oregon Constitution, quoted *supra,* I cannot agree that the decision below adequately states the law in context of this case.

In sum, I would grant review to consider the question of inability to comply with the conditions of release, the impact on rights of belief of the conditions for release specified by the trial court in this case, and whether that impact was lawful. And I would defer a decision on mootness of the issue of lawfulness of incarceration to compel the future

---

[7] Or Laws 1991, ch 724, § 5 (SB 376 B-Eng, § 5(10)), not yet in effect, provides that inability to comply is an affirmative defense but does not define "inability." Section 6(7) contemplates that the term is subject to proof by evidence.

promise until after briefing, argument, and deliberation on that issue.

Unis, J., joins in this dissent.

## APPENDIX

"MR. ROHMAN, [a non-party respondent]: I would like a chance to read the injunction over, and to pray about it, and to consider it, and would also, please, if you could, object to being incarcerated indefinitely for one violation out of a five month period.

"* * * * *

"MR. ROHMAN: Right. I just want to make just final statement then, that is that the violations [were] on the thirtieth of September 1989 this is the middle of January, 1990, aren't three and a half months enough evidence of compliance? I mean, haven't I complied for three and a half months?

"THE COURT: And all you have to do is tell me that that's your intention, is to comply, and you don't go to jail. I mean that that's all that's required of you. That's the key, that you have in your pocket. That's all that's required of you is to tell me that you intend to obey the injunction.

"MR. ROHMAN: Well, my actions say that. Well, I'll read the injunction.

"* * * * *

"I don't want to take up your time. God bless you. God bless you. Thank you for your patience, I'll read your order. I'll read the injunction when he gives it to me, and I'll pray about it, and see what I'm supposed to do, okay —

"* * * * * [later the following occurred]

"THE COURT: Alright [sic], then I will have to ask you under oath whether you intend to obey the injunction; if you do, *then no penalty will be imposed,* and you will be released from any custodial restrictions of any sort.

"MR. ROHMAN: Okay.

"THE COURT: Would you raise your right hand, please. Do you swear or affirm that you intend to obey the Court's injunction that was issued on August 14, in the Lovejoy matter?

"MR. ROHMAN: Yes, I do.

"THE COURT: Alright [sic]. Then in that case, sir, you are released from any custodial responsibility. We'll enter an order to that effect. You may go." (Emphasis added.)